IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BLAKE B.,                                    :        CIVIL ACTION
                                             :
              AND                            :
                                             :
JACK AND YVONNE B.,                          :        NO. 06-1968
                                             :
              Plaintiffs,                    :
                                             :
        v.                                   :
                                             :
COUNCIL ROCK SCHOOL DISTRICT                 :
                                             :
              Defendant.                     :

## MEMORANDUM

Giles, J.                                                      October 3, 2008

## INTRODUCTION

Blake B. ("Blake"), a minor child, and his parents, Jack and Yvonne B. (collectively,

"Plaintiffs") initiated this case against Defendant Council Rock School District based on claims

arising under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482,

Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §504, and Section 1983

of the Civil Rights Act of 1964 ("Section 1983"), 42 U.S.C. § 1983.[1]  This matter is before the

Court on Defendant's Motion for Disposition on the Administrative Record (Doc. No. 22),

Plaintiffs' Motion for Judgment on the Supplemented Administrative Record (Doc. No. 24) and

all responses and replies thereto.

---

[1] Plaintiffs' Complaint also claims a violation of Pennsylvania law.  (See Compl. ¶ 55.)
That claim fails to cite any Pennsylvania statute, thus, Plaintiffs do not assert properly a violation
of Pennsylvania law.

For the reasons that follow, the court denies Plaintiffs' motion, grants Defendant's motion, and enters judgment in favor of Defendant on all Plaintiffs' claims.

## BACKGROUND

At the time of filing of the Complaint in this case, Blake was fifteen years old and resided in the Council Rock School District ("District"). (Compl. ¶ 2.) He attended Council Rock High School for ninth and tenth grades, but was unilaterally placed in a private school by his parents, Jack and Yvonne B. ("Parents"), between December 8, 2005, and January 2, 2006. (Admin. R., Ex. 5, Due Process Hearing Decision, Feb. 9, 2006 ("D.P. Decision") at 1.) Blake has been found to be gifted but has also been classified as having a Specific Learning Disability ("SLD") in written expression and as Other Health Impaired ("OHI") due to Attention Deficit Hyperactivity Disorder ("ADHD"). (Id.) An April 15, 2003, Evaluation Report ("ER") by the District diagnosed Blake with Asperger's Syndrome, which is in the disability category of autism. (Admin. R., Ex. 8, School District Exhibit S-6 at 11.)

A June 29, 2005, ER by the District ruled out autism and serious emotional disturbance. (D.P. Decision at 1.) The Parents disagreed with the June 29, 2005, ER and requested an Independent Educational Evaluation ("IEE") at District expense. (Id.) The District, asserting that its June 29, 2005, ER was appropriate, denied the request and requested a due process hearing. (Id.)

A due process hearing was held on January 5, 2006, and January 19, 2006, and the record was closed on January 26, 2006. (Id.) The due process hearing addressed one issue: whether the evaluation of June 29, 2005, was appropriate so as to divest Parents of their right to an IEE at District expense. (Id. at 2.) On February 9, 2006, the Hearing Officer found the ER was

appropriate and that the Parents were not entitled to an IEE at District expense.  (Id. at 14.)

Plaintiffs filed exceptions to the Hearing Officer's decision, seeking an appeal to the Appeals Panel.  (See Admin. R., Ex. 1, In Re The Educational Assignment of B.B., Pa. SEA No. 1709 ("Appeals Panel Decision") at 2.)  The Appeals Panel issued its decision on March 27, 2006, affirming all of the Hearing Officer's findings.  (Appeals Panel Decision at 6.)

On May 9, 2006, Plaintiffs filed their Complaint against the District pursuant to IDEA, Section 504, and Section 1983.  (Compl. § 1.)  On March 9, 2007, Plaintiffs filed a Motion for Partial Withdrawal of Claims, seeking to withdraw all claims for compensatory damages asserted pursuant to the IDEA, Section 504, and Section 1983.  (Pls.' Mot. for Partial Withdrawal of Claims (Doc. No. 17), Mar. 9, 2007.)  The Court granted Plaintiffs' motion.  (Order (Doc. No. 18), Mar. 13, 2007.)

The sole issue before the Court is whether Plaintiffs are entitled to an IEE at District expense because, as Plaintiffs allege, the June 29, 2005, ER was inappropriate.  Both Plaintiffs and Defendant were allowed to supplement the administrative record with the expert reports of Dr. Nancy Bloomfield and JoAnn Hibbs, respectively.  Both of the supplemental expert reports were completed in 2007 in connection with the pending court action.

This court affirms the Appeals Panel Decision, in its entirety, thereby granting Defendant's motion and denying Plaintiffs' motion.

## FACTS

The Hearing Officer found the following facts in his February 9, 2006, decision.  (See D.P. Decision at 2-8, Findings of Fact (hereinafter "F.F.").)  As early as first grade, Blake exhibited psychosocial immaturity and problematic behaviors in school, including

inattentiveness, impulsiveness, disruptive behaviors, and social difficulties. (F.F. 1.) Since first grade, standardized tests have consistently placed him in the "very superior" or "gifted" range of overall functioning. (F.F. 2, 5.) He was diagnosed with ADHD in the first grade. (F.F. 3, 5.) The District completed an ER on February 13, 1997, during Blake's first grade year, and identified him as gifted but recommended against placing him in gifted programming because of concerns about organization and task completion. (F.F. 4.)

When Blake was in the fourth grade, the District completed an ER dated February 28, 2000, which identified him as having four exceptionalities: Mentally Gifted, SLD in written expression, Other Health Impairment due to ADHD, and Eligible for Occupational Therapy Services. (F.F. 7.) The ER recommended support services. (F.F. 7.) The February 28, 2000, ER also recognized his emotional and behavioral problems and made related recommendations. (F.F. 8.)

The District completed a third ER, dated April 15, 2003, when Blake was in the seventh grade. (F.F. 9.) This ER identified him with three exceptionalities: Gifted, SLD in written expression, and Asperger's Syndrome. (F.F. 9.)[2] The ER recommended, inter alia, that he receive part time support in a program designed for Pervasive Developmentally Delayed students. (F.F. 9.) In May 2003, Blake's Individualized Education Plan ("IEP") team recommended assigning him to a part time placement in an Autistic Support Class in Richboro Middle School, where he was assigned for his eighth grade year. (F.F. 11.)

---

[2] The Hearing Officer's finding of fact states that the ER diagnosed Blake with autism, but the Hearing Officer cites to the ER itself, which states that Blake is "a high functioning student meeting the criteria of Asperger's Syndrome," which is in the disability category of autism. (F.F. 9; Admin. R., Ex. 8, Sch. Dist. Ex. S-6 at 11.)

On October 7, 2004, during Blake's ninth grade year, because of continuing behavioral issue, his IEP team referred him for psychoeducational evaluation and reevaluation to review his diagnoses of Asperger's Disorder, ADHD, and learning disability. (F.F. 13.)  In a May 25, 2005, report, a private evaluator diagnosed him with Generalized Anxiety Disorder, Depressive Disorder, and ADHD. (F.F. 14.)  The evaluator ruled out a diagnosis of Asperger's Disorder. (F.F. 14.)

The District's psychologist conducted a reevaluation of Blake in June and July 2005 in order to determine whether his present classifications were still appropriate, or whether a classification of "emotionally disturbed" would be appropriate.  (F.F. 17.)  The resulting ER, dated June 29, 2005, after Blake's ninth grade year, identified him as gifted, having a disability (OHI), and having a SLD in written expression.  (F.F. 18.)  The June 29, 2005, ER found that he did not meet the eligibility criteria for classification as a child with the disability of autism.  (F.F. 21.)  The ER found no clear evidence that Blake met the autism criteria set forth in the American Psychiatric Association's Diagnostic and Statistical Manual-VI TR ("DSM-IV TR").  (F.F. 22-25.)  The June 29, 2005, ER did not classify Blake as having serious emotional disturbance. (F.F. 26.)

The ER was based on a variety of assessment tools, including interviews with and observations of Blake, conversations with his parents, teacher reports, and review of Blake's educational records and all previous evaluations by the District and private evaluators.  (F.F. 25, 28-32.)  The school psychologist who conducted the evaluation was appropriately credentialed and trained in the administration of the specific instruments and methods relied upon.  (F.F. 27.)  The standardized instruments utilized during the course of the evaluation included the Wechsler

Intelligence Scale for Children, Fourth Edition ("WISC-IV"), the Wechsler Individual

Achievement Test, Second Edition ("WIAT-II"), the Developmental Test of Visual-Motor

Integration ("VMI"), the Behavioral Assessment System for Children, Parent Report Scale and

Teacher Report Scale ("BASC"), and the Connors Rating Scales - Revised, Connors-Wells

Adolescent Self-Report Scale, Long Version ("CASS:L").  (F.F. 34.)  The ER also reported

results of a May 2005 mental health assessment by Lenape Valley Foundation and an October

2004 Functional Behavioral Assessment.  (F.F. 35.)  All of the instruments utilized in the June

29, 2005, ER were valid and reliable for the purposes for which they were used.  (F.F. 36.)  The

school psychologist did not use any projective instruments to assess emotional disturbance.  (F.F.

37.)  The school psychologist obtained teacher data from three of Blake's teachers from the

2004-2005 school year by asking them to fill out a checklist that she had developed herself and

by asking them to complete the BASC Teacher Rating Scales form.  (F.F. 38.)  Two additional

teachers only filled out the checklist the school psychologist had developed herself.  (F.F. 38.)

The school psychologist's self-devised teacher observation checklist was not normed or validated

for any purpose.  (F.F. 29.)  The school psychologist declined to classify Blake as a student with

autism based on part upon responses to her self-devised checklist, which was based on the

("DSM-IV TR") diagnostic criteria for autism and which was used only for the purpose of

eliciting from the teachers any observations of behaviors that might be relevant to the assessment

of autism.  (F.F. 39-41.)

    In making her autism finding, the school psychologist relied upon Blake's above average

comprehension of social norms as assessed by the Verbal Comprehension Score of the WIAT II

instrument.  (F.F. 42.)  In making her autism and emotional disturbance findings, the school

psychologist relied in part upon the BASC rating scales as rated by Blake's mother and three teachers. (F.F. 43.)  She averaged the scores of the three teacher BASC rating scales into one score, but she was fully aware of any differences in the individual teachers' scores and considered those differences in reaching her conclusions.  (F.F. 44.)  She concluded that the teachers' responses did not demonstrate agreement that Blake exhibited entirely non-reciprocal social behaviors.  (F.F. 45.)  In the school psychologist's own five to six hours of observations of Blake, he did not exhibit social interactions typical of autism or emotional disturbance.  (F.F. 46.)  The school psychologist did not rely on the BASC scores as determinative of the presence or absence of autism or emotional disturbance, but she relied upon the congruence of the BASC scores with other observations by herself, teachers, Blake and his mother.  (F.F. 46.)

The school psychologist concluded that the BASC scores and the CASS:L scales did not support a classification of emotional disturbance.  (F.F. 49, 55.)  She concluded that Blake's arguing with teachers and refusal to do work was due to willful refusal rather than emotional disturbance.  (F.F. 56.  See also F.F. 53, 55 (ruling out emotional disturbance and emotional problems).)

## STANDARD OF REVIEW

Under the IDEA, "any action brought . . . (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B) (2008).  A district court must give "due weight" to the factual findings of the state administrative proceedings.  See Board of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982).  The Third Circuit has interpreted the "due weight"

standard as requiring district courts to conduct a "modified de novo" review of administrative judgments below.  S.H., 336 F.3d at 270 (citations omitted).  When reviewing an administrative decision in a Pennsylvania IDEA case, a federal district court that has not admitted additional evidence is "required to defer to the [Hearing Officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record," id. (citing Carlisle Area Sch. v. Scott P., 62 F.3d 520, 529 (3d Cir. 1995)), and if the court fails to adhere to the administrative findings, it must explain why in order to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency, S.H., 336 F.3d at 270.

Where the district court has admitted additional evidence it is "'free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the Act.'"  S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 270 (3d Cir. 2003) (quoting Oberti v. Brd of Ed. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1220 (3d Cir. 1993)).

## DISCUSSION

**I.   Section 1983 Claims**

Plaintiffs' Section 1983 claims against the District are predicated upon violation of rights secured by the IDEA and Section 504 of the Rehabilitation Act.  Last year, the Third Circuit held that because both the IDEA and the Rehabilitation Act have sufficiently comprehensive remedial schemes, Section 1983 is not available to remedy violations of the rights created by those statutes.  A.W. v. The Jersey City Public Schs., 486 F.3d 791, 803-804, 806 (3d Cir. 2007) (en banc).  The Third Circuit's decision is based on the Supreme Court's reasoning in City of Rancho Palos Verdes v. Abrams, 544 U.S. 113 (2005), regarding the availability of Section 1983 to

redress violations of federal statutory rights.  The Third Circuit's 2007 ruling in A.W. abrogated

its holding in W.B. v. Matula, 67 F.3d 484 (3d Cir. 1995), that violations of a plaintiff's rights

under IDEA and Section 504 were actionable under Section 1983.  A.W., 486 F.3d at 795.  As

there is no genuine issue of material fact, and because the District is entitled to judgment as a

matter of law, this court must grant summary judgment for the District on Plaintiffs' Section

1983 claims.  Id.  See also Ronald E. v. Sch. Dist. of Philadelphia Bd. of Educ., No. 05-2535,

2007 WL 4225584, at *6 (E.D. Pa., Nov.  29, 2007) (holding that parents did not have standing

to sue under Section 1983 to enforce the predicate rights secured by IDEA and Section 504).[3]

## II.   IDEA and Section 504 Claims

34 C.F.R. § 300.352(b) gives parents a right to obtain an IEE at public expense in certain

circumstances.

> (1) A parent has the right to an independent educational evaluation
> at public expense if the parent disagrees with an evaluation
> obtained by the public agency, subject to the conditions in
> paragraphs (b)(2) through (4) of this section.
>
> (2) If a parent requests an independent educational evaluation at
> public expense, the public agency must, without unnecessary delay,
> either--
>
> (i) File a due process complaint to request a hearing to show that
> its evaluation is appropriate; or
>
> (ii) Ensure that an independent educational evaluation is provided
> at public expense, unless the agency demonstrates in a hearing
> pursuant to §§ 300.507 through 300.513 that the evaluation
> obtained by the parent did not meet agency criteria.

---

[3] As this district court observed in a prior case, "A.W. is silent as to the matter of its
retroactive application."  Enright v. Springfield Sch. Dist., No. 04-1653, 2007 WL 4570970, at
*4, n.2 (E.D. Pa., Dec. 27, 2007).

(3) If the public agency files a due process complaint notice to request a hearing and the final decision is that the agency's evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.

(4) If a parent requests an independent educational evaluation, the public agency may ask for the parent's reason why he or she objects to the public evaluation. However, the public agency may not require the parent to provide an explanation and may not unreasonably delay either providing the independent educational evaluation at public expense or filing a due process complaint to request a due process hearing to defend the public evaluation.

34 C.F.R. § 300.352(b).

Plaintiffs claim their right under the IDEA to an IEE at District expense has been violated because the Hearing Officer and Appeals Panel wrongly concluded that the District's evaluation was appropriate. Thus, the court must look to IDEA's requirements for evaluations.

In 2004, Congress amended the IDEA to its current form, titled Individuals with Disabilities Education Improvement Act of 2004 ("IDEA-2004"), which went into effect on July 1, 2005. Pub. L. No. 108-446, 118 Stat. 2647 (2004) (codified as amended at 20 U.S.C. §§ 1400-1482 (2008)). The previous version of the IDEA ("IDEA-1997") was in effect from June 4, 1997, to June 30, 2005. Pub. L. No. 105-17, 111 Stat. 37 (1997) (current version at 20 U.S.C. §§ 1400-1482 (2008)). "[A]mendments to the IDEA have prospective application only." Lawrence Twp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 370 (3d Cir. 2005).

Plaintiffs argue that, because the evaluation period spanned the effective dates of two different versions of the IDEA, both should be taken into account. Although the ER at issue was dated June 29, 2005, (Admin. R., Ex. 8, Sch. Dist. Ex. S-13, Evaluation Report, June 29, 2005 ("Evaluation Report")), there is evidence that the evaluation extended into July 2005, (see

Admin. R., Ex. 7, N.T. 157-160 (stating that a draft ER was produced on June 29, 2005, and

Blake was given an additional test on July 2005). The Hearing Officer found that the evaluation

took place in June and July of 2005. (F.F. 17.) Despite Defendant's arguments to the contrary,

(see Def.'s Br. in Supp. of Mot. for Disp. on Admin. R. (Doc. No. 22) ("Def.'s Br.") at 9-10;

Def.'s Br. in Supp. of Opp'n to Pls.' Mot for Summ. J. (Doc. No. 31) ("Def.'s Opp'n") at 3-6),

the court gives due weight to the Hearing Officer's factual finding and, likewise, holds that the

evaluation extended into July 2005.[4]

The Hearing Officer found it unnecessary to reach the question of which version of the

IDEA applies because he found that the District's ER met the requirements of both versions.

(D.P. Decision at 12.) The court agrees. Considering Plaintiffs' claims under both IDEA-1997

and IDEA-2004, the court finds that the June 29, 2005, ER was appropriate and met all the

requirements of the statute.

A.     **Relevant Statutory Provisions**

In most aspects relevant to this case, the evaluation requirements of IDEA-1997 and

IDEA-2004 are essentially the same. IDEA-2004 requires that local educational agencies who

conduct evaluations

> use a variety of assessment tools and strategies to gather relevant
> functional, developmental, and academic information . . . that may
> assist in determining whether the child is a child with a disability[]
> and the content of the child's individualized education program . . .

20 U.S.C.A. § 1414(b)(2)(A) (2008) (emphasis added). IDEA-1997 contains a very similar

requirement that local educational agencies

---

[4] None of the additional evidence the court admitted opposes the Hearing Officer's
finding that the evaluation extended into July 2005.

> use a variety of assessment tools and strategies to gather relevant
> functional and developmental information . . . that may assist in
> determining whether the child is a child with a disability and the
> content of the child's individualized education program. . . .

20 U.S.C.A. § 1414(b)(2)(A) (2000) (emphasis added).

IDEA-2004 requires that the local education agency "not use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability or determining an appropriate educational program for the child." 20 U.S.C.A. § 1414(b)(2)(B) (2008) (emphasis added).  This requirement is nearly identical to that of IDEA-1997, with the 2004 amendment substituting only the words "measure or assessment" for the word "procedure." See 20 U.S.C.A. § 1414(b)(2)(B) (2000).

IDEA-2004 requires that the local educational agency "use technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors." 20 U.S.C.A. § 1414(b)(2)(C) (2008) (emphasis added).  IDEA-1997 contained an identical requirement.  20 U.S.C.A. § 1414(b)(2)(C) (2000) (emphasis added).  Both versions of the statute require that "the child is assessed in all areas of suspected disability." 20 U.S.C.A. § 1414(b)(3)(B) (2008); 20 U.S.C.A. § 1414(b)(3)(C) (2000).

There is one noteworthy difference between the provisions of IDEA-1997 and IDEA-2004.  The two versions of the statute have different validity requirements for testing instruments.  IDEA-1997 contains specific requirements for standardized tests.  It required that any standardized tests given to a child "have been validated for the specific purpose for which they are used," and "are administered in accordance with any instructions provided by the producer of such tests." 20 U.S.C. § 1414(b)(3)(B) (2000).  The provisions of IDEA-2004 are

worded more broadly, requiring that "assessments and other evaluation materials used to assess a child . . . are used for purposes for which the assessments or measures are valid and reliable," and "are administered in accordance with any instructions provided by the producer of such assessments." 20 U.S.C. § 1414(b)(3)(A) (2008) (emphasis added).

Plaintiffs make three main allegations about the June 29, 2005, ER: 1) that the District used inadequate instruments in the evaluation and failed to administer those instruments according to the tests' instructions (Compl. ¶¶ 41-44); 2) that the District failed to adequately assess whether Blake continues to have autism and emotional disturbance (Compl. ¶¶ 40-41, 43, 46-49, 50); and 3) that the District failed to use the projective testing described in the Permission to Re-Evaluate forms (Compl. ¶ 41).

### B.    The District used a variety of assessment tools and did not rely on a sole instrument as the basis for any of its conclusions.

Based on the supplemented record, the court finds that the District satisfied the IDEA's requirement to "use a variety of assessment tools." 20 U.S.C.A. § 1414(b)(2)(A) (2008).  The Hearing Officer specifically found that to be the case.  (F.F. 25, 28-32.)  The court agrees with the Hearing Officer's conclusion that the school psychologist who authored the ER engaged in a "careful and comprehensive attempt to harmonize a vast amount of often contradictory data, both standardized and historical, observed and subjective." (D.P. Decision at 11.)  The ER included a thorough review of previous evaluations, both by the District and by private evaluators.  (Appeals Panel Decision at 5; F.F. 28.)  The school psychologist relied on standardized instruments such as the WISC-IV, WIATT-II, VMI, and CASS:L in addition to the BASC scales.  (F.F. 34.)  Both the Hearing Officer and the Appeals Panel found that the ER was comprehensive.  (See D.P.

Decision at 10-12; Appeals Decision at 4-6).

It is also clear from the record that the District did not use any single procedure, measure, or assessment as the sole criterion for any of its determinations.  20 U.S.C.A. § 1414(b)(2)(B) (2008); 20 U.S.C.A. § 1414(b)(2)(B) (2000).  (See, e.g., D.P. Decision at 11 (the ER "relied upon far more than a minimal amount of data regarding all of these suspected and identified disabilities," "was based upon standardized testing that addressed all of the issues," and used parent and teacher interviews, the student's self-report, and the school psychologist's own extensive observations.).)  Plaintiffs' expert, Dr. Bloomfield, opined that the school psychologist's Asperger-focused checklists used for the June 29, 2005, ER "do not elicit descriptions of behaviors that are characteristic of Asperger's Disorder," (Pls.' Mot. for J. on the Supplemented Admin. R. ("Pls.' Mot."), Ex. A, Evaluation of Dr. Nancy R. Bloomfield, Mar. 6, 2007 ("Bloomfield Evaluation") at 10), and apparently "constituted the only objective data for rejecting the diagnosis of Asperger's Disorder," (id. at 14).  The supplemented record does not support Dr. Bloomfield's opinion.  Her opinion is directly refuted by the Hearing Officer's factual finding that the school psychologist "relied in part upon responses to her self-devised checklist" in declining to classify Blake as a student with autism, (F.F. 40), and the Hearing Officer's finding that the psychologist also relied in part on the WIAT II and the BASC in reaching her conclusions about autism, (F.F. 42, 43).

Plaintiffs also allege that the school psychologist relied heavily on the BASC rating scale, which they contend is a screening instrument that calls for further assessment.  (Compl. ¶ 42.) The school psychologist did rely in part upon the BASC rating scales, but she did not rely completely on that single measure as the basis for her conclusions regarding autism and

emotional disturbance. (F.F. 43; D.P. Decision at 12.) The Hearing Officer credited the school

psychologist's testimony that she did not rely on the BASC as anything more than a screening

instrument, that she did not view these scores as determinative, and that she relied only upon the

congruence of BASC scores with her own observations of Blake as well as the observations of

his teachers and his Mother. (F.F. 46.) This is consistent with the instructions in the BASC

manual, from which the school psychologist read at the hearing. (N.T. 228-229.)[5] Based on the

supplemented record, the court finds the school psychologist's reliance in part on the BASC did

not violate the IDEA.

**C.       The District evaluated Blake in all areas of suspected disability.**

Although Plaintiffs contend that the District's June 29, 2005, ER failed to adequately

assess whether Blake continues to have Asperger's Syndrome and whether he has an emotional

disturbance, the court finds that the District evaluated Blake in all areas of suspected disability,

as required by the IDEA. See 20 U.S.C.A. § 1414(b)(3)(B) (2008); 20 U.S.C.A. § 1414(b)(3)(C)

(2000).  As stated above, the school psychologist used at least three different instruments to

evaluate whether Blake is a student with autism.  In the ER, she listed the essential features of

---

[5] The school psychologist read the following from the BASC manual:

> No single component of the BASC addresses all of the areas that
> are important in assessment. For this reason, examiners are
> strongly encouraged not to base diagnosis, placement or treatment
> solely on BASC. Neither the BASC nor any other assessment
> instrument can substitute face-to-face contact with the individual
> being evaluated and the interview data that's obtained. The BASC
> must be supplemented with other instruments and interviews in a
> manner dictated by the referral question and careful review of the
> child's history and current status.

(N.T. 229.)

Asperger's Disorder, per the DSM-IV-TR, and stated why Blake did not meet the eligibility

criteria. (Evaluation Report at 15.) She stated that she based that conclusion on her "interview

with parents, teacher input, review of educational records, and review of all private evaluations."

(Id. See also N.T. 115-120.) She also testified that she considered using two other autism rating

scales but that she considered them to be inappropriate for Blake. (N.T. 144-145.) She also

testified as to the specific evidence that led her to rule out Asperger's disorder. (See, e.g., N.T.

134-137.)

  Dr. Bloomfield's opinion that "[t]here is a high probability that Blake does have

Asperger's Disorder," (Bloomfield Evaluation at 16), is not relevant to the question of whether

the District's June 29, 2005, ER was appropriate. That opinion is based on her review of prior

evaluations as well as her own observations between November 2006 and January 2007 – over a

year after the District's evaluation. (Bloomfield Evaluation at 1, 11, 14.) Furthermore, IDEA

simply gives Plaintiffs the right to an appropriate evaluation – not diagnoses with which they

agree.

  Plaintiffs have two main complaints about the District's treatment of emotional

disturbance. First, they contend that the District wrongly concluded that Blake's refusal to

complete assignments, opposition, and defiance were attributable to social maladjustment rather

than to an emotional disturbance. (Compl. ¶ 46.) Although the ER contain "no discussion of the

criteria or factual bases for this differential determination," (F.F. 26), the record shows that the

school psychologist adequately assessed whether Blake suffered from emotional disturbance or

social maladjustment, (see N.T. 126-134, 137-141). She testified that, in order to classify a child

as emotionally disturbed, one or more specific characteristics "have to be exhibited over a long

period of time and to a marked degree and . . . adversely affect a child's educational performance." (N.T. 139-140, N.T. 152.)  She testified that Blake exhibited only one of those criteria, and that it did not rise to the level of a disability.  (N.T. 140-141 ("The only one of those criteria that I think probably did relate to him would have been the social pieces. . . ."); N.T. 139-141 (stating that Blake has no inability to learn and that his physical symptoms, as measured by the somatization scale of the BASC, were in the average range for parents and teacher ratings).)  She also discussed her training and experience as related to socially maladjusted children, and explained that behaviors associated to social maladjustment were "more externalizing types of behaviors." (N.T. 140.)  She noted that Blake exhibited some of those behaviors in class but that they were not "extremely prevalent." (N.T. 140.)

    Second, Plaintiffs contend that the Hearing Officer erred in finding that the school psychologist reasonably concluded that she did not find any emotional disturbance was having a substantial impact on Blake over a long period of time.  (Compl. ¶ 48.)  The court disagrees.  The school psychologist did an extensive review of Blake's educational record, going back to his first grade year, and examined his academic performance, his intellectual functions, and his social and behavioral history.  (See, e.g., N.T. 68-91, 96-97, 108, 141-144.)  The court finds that the District's conclusions were not based on Blake's 2004-2005 grades alone, as Plaintiffs contend.  (See Compl. ¶ 49; Pls.' Mot. at 14.)  The court also finds that the school psychologist considered all the evidence in Blake's educational history, including all previous evaluations conducted by the District.  (See F.F. 28.)  Although, in discussing educational disturbance, the school psychologist noted that depression or inappropriate feelings, which are a characteristic of emotional disturbance, were "not a primary issue at the time the evaluation was being

Page 17 of  21

completed," (N.T. 139; see also N.T. 140 ("at that particular time there were not any strong

issues with depression")), there is ample evidence that she reviewed Blake's full history and was

familiar with the requirement that emotional disturbance characteristics be exhibited over a long

period of time. (N.T. 139-140.) The court finds that, after careful consideration, the school

psychologist did not find that emotional disturbance was having a substantial impact over a long

period of time. (See D.P. Decision at 14.)

The court agrees with the Hearing Officer's conclusion that there is insufficient evidence

in the record to make a compelling link between Blake's oppositional and defiant behavior and

his emotional disturbances. (D.P. Decision at 14.) In the supplemented record, Dr. Bloomfield

concludes that "Blake's performance on the assessments of his emotional function indicates that

he suffers from a constellation of problems that seriously interfere with his ability to perform

well in school. (Bloomfield Evaluation at 16.) She also opines that

> [Blake's] resistance to writing and his failure to complete
> assignments has been attributed to Oppositional Defiant Disorder
> and, in the most recent ER, dismissed as a social maladjustment
> that did not need to be addressed in his IEP. Rather, it appears that
> his failure to complete tasks may be in part explained by his
> difficulty with initiation, and may be neurological in origin.

(Id. (emphasis added).) Although Dr. Bloomfield concludes that Blake has serious social and

emotional problems and that he meets the criteria for the special education disability category of

emotional disturbance, (id. at 16-17), she does not address the criteria for that disability category

or discuss the specific factual bases for her conclusion, (see Hibbs Evaluation at 8). Thus, the

supplemented record does not support Plaintiffs' contention that the District inappropriately

evaluated Blake as to emotional disturbance.

**D.    The District was not required to use projective testing.**

Plaintiffs claim that the ER was not comprehensive because it did not utilize projective testing, which could have allegedly addressed the questions of both autism and emotional disturbance. (Pl.'s Mot. for J. on the Supplemented Admin. R. at 10.)  Neither the IDEA nor federal regulation mandates use of projective testing.  Moreover, the Permission to Re-Evaluate forms to which Plaintiffs refer state that the District will use "[e]valuations as deemed necessary by the school psychologist," and lists only what those evaluations "may include."  (Admin. R., Ex. 8, Sch. Dist. Exs. S-9, S-10, and S-11.)  When the Parents signed one of Permission to Re-Evaluate forms, they added certain tests to the list of prospective tests, and wrote the following above the signature line: "Please include tests as specified on p. 1.  Also include O.T. Evaluation."  (Admin. R., Ex. 8, Sch. Dist. Ex. S-11.)  The Parents' request neither changed the District's mandate under IDEA nor obligated the District to administer any particular evaluations.  The school psychologist explained that she does not use projective testing because, based on her training and experience, she feels it is not valid or reliable.  (F.F. 37; N.T. 67-68, 169.)  The Hearing Officer credited that explanation, as did the Appeals Panel.  (D.P. Decision at 12; Appeals Panel Decision at 4-5.)  The Appeals Panel also noted that the school psychologist's opinion of projective testing is supported by most psychometric authorities and that projectives are not tools for categorical identification under IDEA.  (Appeals Panel Decision at 4.)  Plaintiffs present no non-testimonial, extrinsic evidence to the contrary.

**E.    The District appropriately utilized used technically sound instruments.**

Plaintiffs contend that the District did not use technically sound instruments as required by the IDEA.  See 20 U.S.C.A. § 1414(b)(2)(C).  The IDEA requires that conclusions in an ER

the product of "technically sound instruments" capable of assessing "the relative contribution of cognitive and behavioral factors, in addition to physical and developmental factors." 20 U.S.C. § 1414(b)(2)(C). IDEA-2004 requires that the instruments "are used for purposes for which the assessments or measures are valid and reliable," 20 U.S.C. § 1414(b)(3)(A)(iii) (2008), and "are administered in accordance with any instructions provided by the producer of such assessments." 20 U.S.C. § 1414(b)(3)(A)(v) (2008). The District's ER complied with the requirements of both versions of the statute.

The court agrees with the administrative finding that the District's ER was conducted by a certified school psychologist who is appropriately credentialed and trained in the administration of the specific instruments and methods she relied upon. (F.F. 27; N.T. 58-63.) See 20 U.S.C. § 1414(b)(3)(A)(iv) (2008); 20 U.S.C. § 1414(b)(3)(B)(ii) (2000). Plaintiffs object to the school psychologist's use of a self-devised teacher checklist to determine the existence of autistic-like behaviors. (Compl. ¶ 43.) Plaintiffs argue that the use of the checklist violated the requirement from the 2004 IDEA that evaluation materials be used only for purposes for which they are valid and reliable. The court disagrees. The Hearing Officer found that the school psychologist only used the checklist to elicit from Blake's teachers observations of behaviors that might be relevant to the diagnoses of autism. (F.F. 41.) The school psychologist did not use the checklist as a diagnostic tool. (See D.P. Decision at 12; Defs.' Opp'n, Ex. 1, Evaluation of JoAnn C. Hibbs, May 6, 2007 ("Hibbs Evaluation") at 3 ("The observation form that was devised by the district's school psychologist was not being used for the purpose of diagnosing Blake with Asperger's Disorder.").) The school psychologist could have obtained the same information by simply speaking with Blake's teachers. Moreover, the checklist was based on the DSM-IV TR, which

Page 20 of 21

contains standard diagnostic criteria for autism.  (F.F. 40.)

Plaintiffs also contend that the school psychologist failed to administer and evaluate the BASC according to its instructions because she averaged the scores from the three different teachers into one score.  (Compl. ¶ 44.)  The court disagrees.  The Hearing Officer found that the school psychologist deviated from the ordinary use of the scores but that she  was fully aware of the differences in the individual teacher's scores and considered those differences in reaching her conclusions.  (F.F. 44.)  The school psychologist also testified that she was using BASC as a screening instrument, not a diagnostic tool, (F.F. 46; Appeals Panel Decision at 12).  She testified that the BASC instructions permitted such use if there was a corroboration of different scores, and there was such a corroboration here.  (N.T. 207-224.)  The court finds the District's use of the BASC scales does not violate the IDEA.  Plaintiffs have proffered no non-testimonial, extrinsic evidence that would support a contrary conclusion.

## CONCLUSION

The court affirms the decision of the Appeals Panel and finds that the District's ER was appropriate and Plaintiffs are not entitled to an IEE at public expense.  An Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLAKE B., | : | CIVIL ACTION |
| | : | |
| AND | : | |
| | : | |
| JACK AND YVONNE B., | : | NO. 06-1968 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| COUNCIL ROCK SCHOOL DISTRICT | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

AND NOW, this 3rd day of October, 2008, upon consideration of Defendant's Motion for

Disposition on the Administrative Record (Doc. No. 22), Plaintiffs' Motion for Judgment on the

Supplemented Administrative Record (Doc. No. 24), and all responses thereto, it is hereby

ORDERED that SUMMARY JUDGMENT is entered in favor of Defendant and against

Plaintiffs on all of Plaintiffs' claims for the reasons stated in the accompanying memorandum.

The clerk of court shall close the above-cited matter for all purposes.


BY THE COURT:


_____
JAMES T. GILES          J.